UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN L. AMMONS, | ) | Case No. EDCV 06-0973 PJW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his application for disability insurance benefits. Plaintiff contends that the Agency erred when it failed to properly consider the treating physician's opinion of disability and when it determined at step two that Plaintiff did not have a severe impairment. For the reasons set forth below, the Agency's decision is affirmed.

In Plaintiff's first claim for relief, he alleges that the Administrative Law Judge ("ALJ") erred when he rejected the opinion of Plaintiff's treating physician, Dr. Floyd Andersen, that Plaintiff was disabled as a result of chronic fatigue syndrome ("CFS") and

fibromyalgia.[1]  (Joint Stipulation at 3.)   There is no merit to this claim.

Plaintiff was treated by Dr. Andersen from September 2000 to July 2001.[2]  (Administrative Record ("AR") 113-19.)  In a progress report dated October 9, 2000, Dr. Andersen noted that Plaintiff complained of a "sudden onset of fatigue," and that the left side of his face felt numb.  (AR 119.)  Dr. Andersen also noted that Plaintiff complained of memory deterioration, unrefreshed sleep, and was depressed at not being able to work.  (AR 119.)  Dr. Andersen's impression was that Plaintiff was suffering from an "exacerbation" of CFS and he prescribed Plaintiff medication.  (AR 119.)  On October 30, 2000, Dr. Andersen noted that Plaintiff's medication was helping, that his fatigue was "improving," and that his vision was clearer.  (AR 118.)  On February 6, 2001, Dr. Andersen noted that Plaintiff's CFS was improving, that his joint pains were better, and that his muscle pain was "slight[ly] better," but also noted that Plaintiff's fatigue was "only slight[ly] better."  (AR 116.)  Plaintiff was directed to continue exercising "as tolerated."  (AR 116.)  On April 25, 2001, Dr. Andersen noted that Plaintiff was "still fatigued," but that the "B12 [was] helping some," as were the antibiotics.  (AR 115.)  On May 30, 2001, Dr. Andersen noted that Plaintiff's energy was increased, allowing him to do light workouts, and that his fatigue was much better.  (AR 113.)  Dr. Andersen also noted that Plaintiff could

---

[1] Dr. Andersen's last name is incorrectly spelled "Anderson" throughout the Joint Stipulation and ALJ's decision.  The Court follows the spelling used by Dr. Andersen in his letter of August 5, 2004.  (AR 148.)

[2] Plaintiff returned to see Dr. Andersen in October and November 2002 to treat a sore throat.  (AR 110-11.)

return to work "soon in 1-3 months" if he continued to improve.  (AR 113.)  On July 30, 2001, Dr. Andersen noted that Plaintiff's CFS was improving, that his strength was improving, and that he was losing weight.  (AR 113.)

In May 2004, Plaintiff applied for benefits.  In June 2004, the Agency denied his claim by letter, informing him:

> You said you were unable to work because of chronic fatigue syndrome and fibromyalgia.  In order to be eligible for the Disabled Individual disability programs, you must be found disabled on or before 06/30/01, the date you last met the earnings requirements for disability benefits.  The medical evidence in [the] file is insufficient to establish how your condition affected your ability to perform work activities as of that date.  Consequently, you are found not to have been under a disability as of 06/30/01.

(AR 46.)

In the wake of the Agency's denial of his claim, Plaintiff, who was representing himself up to that point, obtained counsel on August 4, 2004.  (AR 52.)  The following day, on August 5, 2004, Plaintiff went back to see Dr. Andersen.  (AR 111-12.)  Dr. Anderson examined Plaintiff and discovered that Plaintiff exhibited 14 of 18 tender points, indicating fibromyalgia.  (AR 112.)  Dr. Andersen then prepared a letter for Plaintiff, stating that Plaintiff had been unable to work from 1998 to July 2000, had been able to work from July 2000 to October 2000, and has been "100% disabled since October 2000." (AR 148.)

On August 18, 2004, Plaintiff moved for reconsideration of the Agency's denial of his claim for benefits.  (AR 53.)  The Agency again

denied his claim. (AR 54.) Plaintiff then sought reconsideration by an Administrative Law Judge ("ALJ"), which request was granted.

The ALJ held a hearing, in which Plaintiff appeared with counsel and testified. (AR 148A-165.) Thereafter, the ALJ issued a decision, denying Plaintiff's claim for disability insurance benefits. (AR 10-15.) The ALJ rejected Dr. Andersen's view that Plaintiff was totally disabled since October 2000. (AR 13.) He pointed out that Dr. Andersen did not provide appropriate laboratory findings or a comprehensive rationale to support his opinion. (AR 13.) He also noted that Dr. Andersen never concluded in 2000 and 2001, when he was seeing Plaintiff on a regular basis, that Plaintiff was totally disabled, rather, Dr. Andersen was noting at that time that Plaintiff's condition was improving. (AR 13-14.) Finally, the ALJ emphasized the fact that Dr. Andersen never attempted to rule out other causes for Plaintiff's ailments before concluding that Plaintiff had chronic fatigue syndrome and fibromyalgia, which is required under social security rulings. (AR 14.)

In order to uphold the ALJ's rejection of Dr. Andersen's opinion of disability--which was contradicted by consulting examiner Chang's opinion of non-disability--the Court must find that the ALJ set forth specific and legitimate reasons for rejecting it. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Court so finds here.

Social Security Ruling ("SSR") 99-2p sets forth the appropriate standard for evaluating cases involving CFS. According to that ruling, "CFS constitutes a medically determinable impairment when it is accompanied by medical signs or laboratory findings." SSR 99-2p at *1. Such signs include "the presence of clinically evaluated, persistent or relapsing chronic fatigue that is of new or definite

onset . . . cannot be explained by another physical or mental disorder, [and] is not the result of ongoing exertion." *Id.* Furthermore, at least four recognized symptoms must have "persisted or recurred during six or more consecutive months of illness and must not have pre-dated the fatigue."[3] *Id.* at *1-2. "In accordance with criteria established by the [Centers for Disease Control and Prevention], a physician should make a diagnosis of CFS 'only after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded.'" *Id.* at *1.

The ALJ's rejection of Dr. Andersen's August 2004 opinion that Plaintiff was totally disabled as of October 2000 is supported by a number of specific and legitimate reasons. First, the ALJ noted that Dr. Andersen had failed to provide laboratory findings to support his finding that Plaintiff suffered from fibromyalgia. (AR 13.) The only objective signs in Dr. Andersen's notes were the tender points noted in the August 2004 examination, more than three years after Plaintiff's date last insured.[4] (AR 112.) The fact that Plaintiff had tender points in August 2004 has little if any bearing on whether he had fibromyalgia more than three years earlier in June 2001. A

---

[3] "Self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities; sore throat; tender cervical or axillary lymph nodes; muscle pain; multi-joint pain without joint swelling or redness; headaches of a new type, pattern, or severity; unrefreshing sleep; and postexertional malaise lasting more than 24 hours." SSR 99-2p at *2.

[4] The ALJ found and Plaintiff does not contest that his date last insured was June 30, 2001. Accordingly, Plaintiff was required to prove that he was disabled within the meaning of the Social Security Act on or before that date. *See* 42 U.S.C. § 423(c); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

treating physician's opinion may be rejected where it lacks "supportive objective evidence" or "substantive medical findings" to support its conclusion. *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004). That certainly is the case here.

Second, as noted by the ALJ, Dr. Andersen failed to rule out other causes before reaching the conclusion that Plaintiff suffered from CFS. SSR 99-2p requires that a physician first rule out alternative explanations for an individual's symptoms before concluding that he suffers from Chronic Fatigue Syndrome. *See* SSR 99-2p at *2.[5]

Third, Dr. Andersen's contemporaneous treatment records, which suggest as early as October 30, 2000, and throughout the year that followed that Plaintiff's condition was improving, do not provide "the sort of description and recommendations one would expect to accompany [the] finding that [Plaintiff] was totally disabled" as stated in Dr. Andersen's August 5, 2004 letter. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)(affirming ALJ's rejection of treating physician opinion where findings indicated that claimant was not disabled); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (affirming rejection of treating physician's opinion, contained in letter opinion of 1992, that claimant was disabled between 1981 and 1986, where letter was conclusory and inconsistent with physician's own contemporaneous findings). In sum, Dr. Andersen's records are

---

[5] Signs include "palpably swollen or tender lymph nodes on physical examination; nonexudative phyaryngitis; persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points." SSR 99-2p at *3. Laboratory findings include an elevated antibody count; an abnormal magnetic resonance imaging brain scan; and neurally mediated hypotension. *Id.*

simply insufficient to support his bare assertion in 2004 that Plaintiff was totally disabled as of 2000, and the ALJ did not err in so finding.

Plaintiff contends that the ALJ was required to develop the record further by recontacting Dr. Andersen, and points out that Dr. Andersen invited such contact in his August 5, 2004 letter.[6] (Joint Stipulation at 5.)  Plaintiff is incorrect.  The regulations provide that the Agency must recontact an applicant's treating physician only where the evidence is inadequate to make a disability determination or is ambiguous.  *See* 20 C.F.R. §§ 404.1512(e), 416.912(e), 416.927(c)(3).[7]  Dr. Andersen's records were neither inadequate or ambiguous.  Dr. Andersen clearly set forth that he thought that Plaintiff was disabled due to fibromyalgia.  He also included all of his treatment notes which informed his decision.  The ALJ did not reject Dr. Andersen's opinion because it was ambiguous or inadequate.

---

[6] In that letter, Dr. Andersen stated, "If further information is needed in regard to Mr. Ammon'[s] disability, please feel free to contact us here."  (AR 148).

[7] 20 C.F.R. §§ 404.1512(e) and 416.912(e) provide:

When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination of a decision . . . (1) . . . We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 416.927(c)(3) provides that if the ALJ does not have sufficient evidence to make a disability determination, he will "try to obtain additional evidence" under the provisions just cited.

He rejected it because it was unsupported by Dr. Andersen's treatment notes. Because the records were neither inadequate or ambiguous, there was no need to recontact Dr. Andersen.

Finally, Plaintiff complains that the ALJ erred when he determined at step two that Plaintiff did not have a medically determinable impairment. (Joint Stipulation at 9-12.) Again, the Court disagrees.

At step two, an ALJ must decide whether a claimant has a severe impairment. A severe impairment is one that significantly limits a claimant's ability to perform basic work-related activities. Step two is intended to be a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)(citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). However, "regardless of how many symptoms an individual alleges or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005)(quoting SSR 96-4p)(affirming ALJ's finding that claimant had failed to establish existence of severe impairment); *compare Webb v. Barnhart*, 433 F.3d 683, 687-88 (9th Cir. 2005) (reversing ALJ's finding that claimant lacked medically severe impairment where medical record included "objective medical evidence demonstrating" various impairments, including x-rays and adverse medication side effects).

In reaching the conclusion that Plaintiff did not have a severe impairment, the ALJ found that there was no evidence that Plaintiff's symptoms could not have been treated with medication or that the

medication would have caused side effects that would interfere with Plaintiff's ability to work. (AR 13.) The ALJ also found that Plaintiff had produced no evidence to support his claim that he had been unable to perform many daily activities at that time, and that there was no evidence of hospitalization, pain clinic treatment, emergency room admission, or psychiatric treatment of any kind. (AR 14.) The ALJ concluded at step two that Plaintiff did not have a severe impairment because, under SSR 99-2p, "there was insufficient evidence in the record to support the conclusion that [Plaintiff] has severe [CFS] and intermittent fibromyalgia." (AR 14.)

As noted above, SSR 99-2p provides that the existence of CFS as a "medically determinable impairment" may only be established after two conditions have been satisfied. First, other possible causes for the reported symptoms must be ruled out. Second, certain medical signs or laboratory findings must be present. SSR 99-2p at *2. Plaintiff did not establish either in this case. Dr. Andersen did not expressly rule out other possible causes and did not perform the objective tests on Plaintiff until more than four years after Plaintiff's eligibility for benefits had expired. Thus, the ALJ's step two finding that Plaintiff did not have a severe impairment is supported by substantial evidence in the record and is affirmed.

IT IS SO ORDERED.

DATED:    February 15 , 2008.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\AMMONS, J 973\Memo_Opinion.wpd